UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DOYLE FOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:20-cv-75-MTS |
| | ) |
| KILOLO KIJAKAZI, *Acting Commissioner of* | ) |
| *the Social Security Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of Social Security, denying the application of Doyle Fox ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] In November 2018, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (collectively the "Act"). (Tr. 141–46). Plaintiff alleges disability beginning August 2, 2017, due to hearing loss, vision problem, and back problem. (T. 163–72). In March 2020, following a hearing, (Tr. 25–79), an Administrative Law Judge ("ALJ") issued her decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 10–20). For the following reasons, the matter is reversed and remanded for further proceedings.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is substituted as the proper defendant.

[2] Section 1383(c)(3) of the Act provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 10–20), the Appeals Council denied Plaintiff's request for review, (Tr. 1–6). Thus, the ALJ's decision stands as the Commissioner's final decision.

I.  **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e).  At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545.  The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by comparing the RFC with the physical demands of the claimant's

2

past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp."  *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability. (Tr. 12). At Step 2, the ALJ found Plaintiff had severe impairments of mixed hearing loss and chronic otitis media. (*Id.*). At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of statutorily recognized impairments. (Tr. 13). Thus, the ALJ found Plaintiff had the RFC to perform "full range of work" at all exertional levels with some limitations. (Tr. 14–19). Plaintiff cannot climb ladders, ropes, or scaffolding and can occasionally climb ramps and stairs. Plaintiff can "no more than frequently" balance, stoop, kneel, crouch, and crawl. Plaintiff must never be exposed to unprotected heights and hazardous work environments and avoid concentrated exposure to vibration and noise above a moderate level as defined by Appendix D of the Selected Characteristics of Occupation. At Step 4, the ALJ found Plaintiff could return to his past relevant work as a packager machine and telephone solicitor. (Tr. 14). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 19).

## III. Discussion

The specific issues in this case are (1) whether the ALJ properly evaluated the medical opinion of Dr. Anthony Mikulee, (2) whether substantial evidence supports the ALJ's RFC finding, and (3) whether substantial evidence supports the ALJ's finding that Plaintiff can perform his past relevant work. Upon review of the record, the Court finds the ALJ improperly assessed medical opinions of record and that substantial evidence does not support the RFC assessment and subsequent job finding at Step 4.

A. ***The ALJ Improperly Evaluated Dr. Anthony Mikulee's Opinion***

The Court finds that the ALJ did not properly evaluate Dr. Anthony Mikulee's medical opinion. In April 2019, Plaintiff had a consultative examination with Dr. Mikulee, from the Department of Otolaryngology at the Saint Louis University School of Medicine. (Tr. 241–43). On physical examination, Dr. Mikulee noted an infected canal wall down the cavity of Plaintiff's left ear. Dr. Mikulee also performed an audiogram that showed Plaintiff's right ear had moderate to profound hearing loss and his left ear exhibited moderate/severe to profound hearing loss. Based on his observation and objective testing, Dr. Mikulee opined Plaintiff could not hear and understand normal conversational speech, but that his hearing acuity could be restored or improved with a hearing aid. He also found Plaintiff had excellent word understanding in the right ear and good word understanding in the left. Dr. Mikulee diagnosed bilateral mixed hearing loss as indicated in the audiogram and opined Plaintiff needed hearing aids or possibly a BAHA implantation.

The ALJ rejected Dr. Mikluee's opinion as unpersuasive. (Tr. 15). First, the ALJ found Dr. Mikluee's rationale was inconsistent with the record, which, according to the ALJ, did not show a lack of communication to providers or at the hearing. Contrary to the ALJ's assertion, a plain look at the record shows multiple instances of hearing and communication issues, including to medical providers and during the ALJ hearing. *See, e.g.*, (Tr. 229–30, 306, 27). Second, the ALJ found Dr. Mikluee's opinion inconsistent with his own findings. The ALJ points to the fact that Dr. Mikulee found "good to excellent word recognition" inconsistent with his opinion that Plaintiff is not able to hear and understand normal conversational speech. But word recognition does not impact someone's ability or inability to hear. And Dr. Mikulee made this conclusion based on objective medical testing (i.e.: audiogram). *See* 20 C.F.R. §§ 404.1520c(b)(2)–(c)(1)

(explaining "supportability" is the most important factor in the persuasiveness of a medical opinion, which requires objective medical evidence and supporting explanation to support the opinion). As such, the "ALJ made an improper medical conclusion based on [her] lay opinion of the evidence." *Nelson v. Saul*, 413 F. Supp. 3d 886, 913 (E.D. Mo. 2019); *see also Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) (explaining an "ALJ's reliance on . . . his own beliefs as to what the medical evidence should show do[es] not constitute substantial evidence" to support a conclusion that a claimant is not disabled). Further, and quite possibly, most notably, Dr. Mikulee is an otolaryngologist, meaning he specializes in the *ears*, nose, and throat. As a specialist in the exact area at issue, his opinion on Plaintiff's hearing is accorded great weight.[3] *See* 20 C.F.R. § 404.1520c(c)(4); *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). Based on these reasons, the ALJ erred, both factually and as a matter of law, when she chose to reject Dr. Mikulee's opinion.

B. ***The ALJ's RFC Finding Is Not Supported By Substantial Evidence***

The main issue is whether the RFC properly accounted for Plaintiff's limitations. A claimant's RFC is a medical question, *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), that must be supported by "some medical evidence of the claimant's ability to function in the workplace." *Cox*, 495 F.3d at 619; *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) ("[T]he RFC is ultimately a medical question that must find at least some support in the medical evidence in the record."). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the [ALJ]." *Cox*, 495 F.3d at 619–20. The ALJ must

---

[3] This general rule does not apply only when the opinion of the specialist is controverted by substantial evidence or is otherwise discredited. *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). As the Court discussed in this Memorandum and Order, the ALJ incorrectly evaluated Dr. Mikulee's opinion, as it is consistent with substantial medical evidence and his own medical findings.

6

only include limitations the ALJ finds credible based on evaluation of the entire record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

With regard to his hearing loss, Plaintiff argues that the ALJ's determination of his RFC did not adequately account for the severity of the loss and the accompanying limits on his abilities. Plaintiff also argues the ALJ failed to account for his other physical and mental limitations. The Court finds that the ALJ overlooked some of Plaintiff's important functional limitations.

First, the ALJ did not include hearing limitations supported by the evidence. The RFC's only limitation related to hearing is "noise above a moderate level as defined by Appendix D of the Selected Characteristics of Occupations." (Tr. 14). Though the ALJ correctly recognized Plaintiff requires work with a noise level limitation, the ALJ failed to support the specific noise level limitation (i.e.: moderate) with credible medical evidence. *Cox*, 495 F.3d at 619 ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."); *see also Goff*, 421 F.3d at 793 (explaining the RFC is based on all "credible evidence"). All three consultative doctors found that Plaintiff's hearing loss rendered him unable to hear normal conversational speech. (Tr. 243, 306, 229). Dr. Prianka Chilukuri was the only doctor that opined on a specific noise level limitation. She found Plaintiff could sustain exposure to "loud" noise, (Tr. 314), but this conclusion is both not supported by the record or consistent with her own examination. The ALJ correctly rejected Dr. Chilukuri's "loud" noise limitation.[4] The other two medical opinions are

---

[4] Notably, the ALJ did not make this explicit finding, nor did it discount any persuasiveness of Dr. Chilukuri's opinion. The Court notes that even if the ALJ had not rejected Dr. Chilukuri's conclusion, her opinion on "loud" noise exposure would not properly be accorded weight. Dr. Mikulee, an otolaryngologist, as a specialist in the ears, opinion on Plaintiff's hearing is accorded greater weight than the opinion of a general physician—such as Dr. Chilukuri. *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (explaining the "opinion of a specialist is accorded greater weight than the opinion of a general physician"); *see* 20 C.F.R. § 404.1520c(c)(4). Dr. Mikulee found Plaintiff had *moderate* to *moderate severe* to *profound* hearing loss, diagnosed Plaintiff with bilateral mixed hearing loss, and opined Plaintiff needed hearing aids or possibly a BAHA implantation. These findings do not support a finding that Plaintiff could work in an environment with loud noise exposure.

7

silent on a specific noise level limitation, and no other medical evidence mentions or supports a level at which it would be sufficient for Plaintiff to function. The ALJ cannot "play doctor," meaning that the ALJ cannot "substitute a doctor's opinion for his own." *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020). But, in making the determination that Plaintiff could work at a moderate noise level, the ALJ substituted her opinion for that of a doctor. Rather, the ALJ should have sought clarification from the opining doctors or sought additional examinations and tests to determine specifically what noise level limitation is appropriate here. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *McCoy*, 648 F.3d at 612 (requiring ALJ to order medical examinations and tests "only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled"). Because the ALJ failed to develop this "crucial issue" and instead, improperly substituted her own opinion to determine a moderate noise level limitation, the ALJ erred.[5] *Goff*, 421 F.3d at 791; *Adamczyk*, 817 F. App'x at 289.

Second, the ALJ did not account for Plaintiff's limited intellectual abilities. Plaintiff is diagnosed with limited literacy. (Tr. 231). He has a seventh grade education level and never finished his GED due to his inability to read or write. (Tr. 168, 30). During a consultative examination, Dr. Horwitz noted Plaintiff's limited ability to read and write, specifically noting it "took him a long time to read the forms and he asked for assistance in finishing filling them out because it was difficult for him to read and for him to write well and legibly." (Tr. 229–31). Although the extent of this limitation is unknown, the ALJ should have inquired further to determine the severity of Plaintiff's literacy issues, rather than disregarding this limitation entirely.

---

[5] Nor does "some" medical evidence support the ALJ's finding of a moderate noise level limitation. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("There is no requirement that an RFC finding be supported by a specific medical opinion."); *Nisic v. Kijakazi*, 4:20-cv-1202-MTS, 2022 WL 605230, at *11 (E.D. Mo. Mar. 1, 2022) (affirming RFC finding based on ALJ's review of medical reports and evidence in the record, absent a medical opinion).

8

*See* (Tr. 13); *see Barrett*, 38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

Third, the ALJ did not account for Plaintiff's communicative limitations. As discussed by the Court above, Plaintiff's intellectual limitations pose challenges to effective communication—ones that the ALJ failed to consider. Regarding communication limitations relating to Plaintiff's hearing loss, several doctors noted this issue, see, e.g., (Tr. 56, 307),[6] including Dr. Mikulee, (Tr. 243), whose opinion is accorded great weight, which the ALJ will properly re-assess and incorporate into the RFC on remand.

Finally, the ALJ's RFC finding that Plaintiff can perform a "full range of work" at "all exertional levels" is not supported by substantial evidence.[7] A full range of work means Plaintiff can perform a job where he can lift up to 100 pounds. *See* 20 C.F.R. § 404.1567. Working at "all exertional levels" means Plaintiff has no limitations on his "ability to meet the strength demands of jobs" such as sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at § 416.969a(b). Plaintiff is a fifty-nine year old man with degenerative disc disease, (Tr. 237), and has documented strength issues such as difficulty walking and balancing. *See, e.g.*, (Tr. 306–07, 230–31). No provider opined that Plaintiff could ever lift more than 50 pounds. (Tr. 310). Further, medical providers noted Plaintiff had "significant" limitation of range of motion in his neck, (Tr. 307), and "mild" limitation in his spinal range of motion. (Tr. 231). Although these limitations

---

[6] Notably, the ALJ found Dr. Cole's opinion "unpersuasive," but the stated reasons were related to Plaintiff's physical/strength ability, not hearing loss. (Tr. 18). Regardless, the Court also finds the ALJ improperly rejected Dr. Cole's opinion. As an example, diagnostic imaging of Plaintiff's spine supports Dr. Cole's opinion, contrary to the ALJ's assertion. *See, e.g.*, (Tr. 237).

[7] Although the ALJ did not find other severe impairments, other than hearing impairments, the ALJ must consider all of a claimant's impairments—severe and non-severe—in determining the RFC. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2).

9

may not render him disabled, the record does not support a finding that Plaintiff is capable of a full range of work at all exertional levels.

### C. *The ALJ's Work Finding is Not Supported By Substantial Evidence*

Finally, the Court considers whether the ALJ's determination that Plaintiff can return to his past relevant work, and is therefore not disabled, is supported by substantial evidence. The ALJ concluded that Plaintiff could return to his past work as a telephone solicitor and a packager machine. (Tr. 19). Defendant concedes the ALJ incorrectly found Plaintiff could perform past work as a packager machine,[8] but argues such error was harmless because Plaintiff could still perform past work as a telephone solicitor. Doc. [25] at 14. The Court does not agree; substantial evidence does not support Plaintiff working as a telephone solicitor.[9]

First, the vocational expert ("VE") testified that if someone could not write or required a quiet level of noise[10] to work, that work as a telephone solicitor was not possible. (Tr. 45–46). Here, the record plainly shows Plaintiff has extreme difficulties hearing. Notably, the packager machine job was eliminated because Plaintiff could not work at a specific noise level. (Tr. 45). Further, the record shows Plaintiff has literacy issues that could preclude him from working as a telephone solicitor. *Detrick v. Callahan*, 115 F.3d 573, 574–75 (8th Cir. 1997) (finding claimant's limited education and issues reading and writing inconsistent with ability to perform work with language skills).

---

[8] The VE's assessment eliminated the job of packager machine because the VE testified that someone who could not tolerate moderate noise could not work as a machine packager.

[9] Notably, Defendant does not address Plaintiff's point that someone with significant communication and hearing problems, such as Plaintiff, also could not perform work as a telephone solicitor.

[10] The VE testified that a limitation to work at "quiet level" of noise, defined as library level noise, would preclude work as a telephone solicitor. As the Court previously noted, substantial evidence does not support a noise level limitation, and because the ALJ erred in determining Plaintiff's RFC relating to hearing limitation, the ALJ's Step 4 job finding is inherently inadequate. 20 C.F.R. § 416.960(c) (determining Step 4 based on RFC).

Second, the telephone solicitor DOT conflicts with Plaintiff's limitations. The DOT provides that a telephone solicitor requires frequent "hearing." DICOT 299.357-014, 1991 WL 672624. Regarding literacy, a telephone solicitor requires Level 3 "reading" with the ability to read "a variety of novels, magazines, atlases, and encyclopedias" and the ability to write "reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech."[11] *Id.* As for communication, this position requires a worker to "speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice." *Id.* Based on the record before the Court, it is a stretch of the imagination to believe Plaintiff could perform these duties on a day-to-day basis with his severe hearing loss, limited educational background, and language and literacy development skills. Rather, the record before the Court, including the VE's testimony and medical evidence, places Plaintiff well below the levels outlined in the DOT.

Finally, uncontradicted medical evidence shows Plaintiff must consistently be communicated with at an amplified level, which not only conflicts with a telephone solicitor job, but also requires special conditions that may preclude employment all together. *See* 20 C.F.R. § 416.973(c).

Thus, the Court cannot say there is substantial evidence on the record as a whole that Plaintiff has the physical or intellectual capacity to perform his past work as a telephone solicitor.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly,

---

[11] Notably, the ALJ crafted a hypothetical to the VE that Plaintiff "would need to avoid occupations that require writing words." (Tr. 44).

11

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **REVERSED** and **REMANDED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 27th day of April 2022

MATTHEW T. SCHELP  
UNITED STATES DISTRICT JUDGE